**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 16a0387n.06**

**No. 15-2376**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JOSHUA THEO SMITH, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

**FILED**
Jul 08, 2016
DEBORAH S. HUNT, Clerk

BEFORE: McKEAGUE and GRIFFIN, Circuit Judges; and BERTELSMAN, District Judge.[*]

GRIFFIN, Circuit Judge.

The government appeals an order of the district court granting defendant Joshua Smith a modified sentence. Previously, Smith pleaded guilty to conspiring to distribute cocaine and cocaine base and was sentenced to 96 months' imprisonment. Three years later, he moved for a modification pursuant to 18 U.S.C. § 3582(c)(2). The district court granted Smith's motion, reducing his sentence to 80 months—a term less than the minimum of his amended Guideline range. Because the Sentencing Guidelines prohibit such a reduction, we vacate the district court's modified sentence and remand for reinstatement of Smith's original sentence.

---

[*]The Honorable William O. Bertelsman, Senior Judge, United States District Court for the Eastern District of Kentucky, sitting by designation.

I.

In October 2011, Smith pleaded guilty to one count of conspiracy to distribute 500 grams of cocaine and 50 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1) and 846. A probation officer prepared a presentence report (PSR) for Smith using the November 1, 2011, edition of the Guidelines Manual.[1]

The PSR found defendant responsible for 174.439 grams of cocaine base and 819.799 grams of powder cocaine, corresponding to an initial base offense level of 28.[2] To offense level 28, the PSR added a two-level leadership enhancement and a three-level acceptance of responsibility reduction, *see* U.S.S.G. §§ 3B1.1 and 3E1.1, for a final base offense level of 27. With a criminal history category of IV, defendant's resulting Guidelines range was 100 to 125 months' imprisonment.

In January 2012, the parties appeared before the district court for sentencing. There, the court explained that its calculation of defendant's base offense level and Guidelines range was "somewhat different from the calculation by the probation officer":

> I calculated the offense level based on a one-to-one powder to crack cocaine ratio, leading to an offense level of 25, the Criminal History Category remains at 4, but the advisory guidelines range for incarceration drops to 84 to 105 months . . . .

---

[1]Unless otherwise noted, all citations are taken from that same edition. *See* 18 U.S.C. § 3553(a)(4)(A)(ii) (courts shall consider the Guidelines "in effect on the date the defendant is sentenced").

[2]This initial figure was dictated in part by U.S.S.G. § 2D1.1 cmt. 10(D)(i) (eff. Nov. 1, 2008), which directs the probation officer to reduce a defendant's offense level by two "if the offense involves cocaine base ('crack') and one or more other controlled substance." As the government notes, however, the Sentencing Commission eliminated comment 10(D)(i) effective November 1, 2010. *See* U.S. Sentencing Guidelines Manual Supplement, Introduction (eff. Nov. 1, 2010). But for this erroneous mixed-drugs reduction, Smith would have started with a base offense level of 30.

A one-to-one ratio treats one gram of crack cocaine the same as one gram of powder cocaine, eliminating the sentencing disparity between the substances. *See, e.g.*, *United States v. Lewis*, 623 F. Supp. 2d 42, 47–48 (D.D.C. 2009) (demonstrating a one-to-one ratio). Thus, instead of calculating a sentencing range for 174.439 grams of crack cocaine and 819.799 grams of powder cocaine, the district court took the total amount of drugs Smith conspired to distribute—994.238 grams—and calculated the Guidelines range as if it were all powder cocaine. Under the 2011 Guidelines, 994.238 grams of powder cocaine corresponds to a base offense level of 26, *see* U.S.S.G. § 2D1.1(c)(7), which the district court reduced to 25 to account for the PSR's leadership enhancement and acceptance of responsibility reduction. Offense level 25 and criminal history category of IV led the court to an 84-to-105 month range.[3]

Counsel for the government "object[ed] to the imposition of the one-to-one ratio," but acknowledged the court's "discretion to disagree with the policy of the guidelines." Using a final offense level of 25 and a Guidelines range of 84 to 105 months, the district court proceeded to allocution and sentenced defendant to 96 months' imprisonment.

In January 2015, defendant moved for a modified sentence "pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the United States Sentencing Guidelines." In response to the motion, the district court requested a sentence modification report (SMR) explaining whether Amendment 782 had the effect of lowering defendant's original Guidelines range, thereby qualifying him for a potential reduction.

In the SMR, the probation officer recited Smith's "Original Guideline Calculation as Determined by the Court at Sentencing,"—including the "*1:1 powder cocaine to crack cocaine*

---

[3]Because the district court's analysis assumed defendant conspired to distribute only powder cocaine, it did not include the PSR's erroneous mixed-drug reduction.

*ratio*" which, after the appropriate adjustments, yielded a final base offense level of 25 and a corresponding Guidelines range of 84 to 105 months' imprisonment.

Next, she determined defendant's post-Amendment 782 Guidelines range. Again here, the probation officer carried over the one-to-one ratio the district court adopted at Smith's sentencing: "*At the time of sentencing the Court used a 1:1 powder cocaine to crack cocaine ratio, which reduced the offense level to 26. At this time the offense level is reduced to 24.*" Leadership and acceptance of responsibility adjustments reduced 24 to a final base offense level of 23. Combined with a category IV criminal history, Smith's modified Guideline range was 70 to 87 months' imprisonment—at least a year less than his original range. Finally, the probation officer recommended a reduced sentence of 80 months' imprisonment.

The government opposed the report's recommendation. It argued the probation officer incorrectly determined Smith's amended Guideline range by "merely continu[ing] the same 1 to 1 conversion ratio for converting cocaine base to cocaine" to reach the initial base offense level of 24. According to the government, what she should have done was apply Amendment 782's modifications without incorporating the one-to-one ratio the district court ultimately adopted at sentencing. Under the government's proposed calculation, Smith's amended Guideline range was "100 to 125 months in prison, which is higher than [his] current sentence of 96 months in prison." Consequently, because defendant's amended Guideline range was not lower than the 84-to-105 month range used at sentencing, the government argued he was ineligible for a reduction, and "object[ed] to any modification of Joshua Smith's sentence."

The district court ruled on Smith's motion without a hearing. In a terse order, the court stated that it "determined that the defendant is eligible for a reduction of sentence," after "[h]aving fully considered" the SMR and the parties' responses. It then reduced defendant's

sentence to 80 months without explaining why this term served the factors in 18 U.S.C. § 3553(a). The government timely appeals.

## II.

We review a district court's decision on a motion to modify a sentence for abuse of discretion. *United States v. Washington*, 584 F.3d 693, 695 (6th Cir. 2009). A district court abuses its discretion when it "relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *Id.* Whether a district court was correct in finding the defendant eligible for a sentence modification is a question of law reviewed de novo. *United States v. Riley*, 726 F.3d 756, 758 (6th Cir. 2013).

"A district court may modify a defendant's sentence only as authorized by statute." *United States v. Howard*, 644 F.3d 455, 457 (6th Cir. 2011). Section 3582(c) authorizes sentence modification when "(1) the defendant 'has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . ' and (2) 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010) (quoting 18 U.S.C. § 3582(c)(2) (emphasis omitted)). Here, the government agrees Smith was sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered by the Sentencing Commission in Amendment 782. Amendment 782 reduced the base offense levels for crack cocaine offenses in U.S.S.G. § 2D1.1(c)'s drug quantity tables. *See United States v. Smith*, 814 F.3d 802, 803 (6th Cir. 2016) (per curiam) (explaining amendment). The government disagrees, however, on the second element; it contends that reducing defendant's sentence is not consistent with the Sentencing Commission's applicable policy statements in U.S.S.G. § 1B1.10.

Section 1B1.10 limits modification in two ways: first, it provides that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement" if the amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). Second, it directs sentencing courts "not [to] reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range." U.S.S.G. § 1B1.10(b)(2)(A). Taken together, these restrictions require the modifying court to compare the defendant's applicable guideline range at sentencing with the amended Guideline range. If the amended Guideline range is lower than the applicable Guideline range, the defendant may qualify for a modified sentence—with the caveat that the court may not reduce his sentence to a term less than the low end of the amended Guideline range. *See, e.g.*, *United States v. Garrett*, 758 F.3d 749, 752–53 (6th Cir. 2014) (illustrating § 1B1.10(a)(2)(B)); *United States v. Jackson*, 751 F.3d 707, 711–12 (6th Cir. 2014) (illustrating § 1B1.10(b)(2)).

The government argues that in relying on the SMR to grant Smith a modification, the district court exceeded both limits, once by miscalculating Smith's applicable Guideline range, and again by reducing his 96-month sentence below the amended Guideline range to 80 months' imprisonment.

## A.

Smith may be eligible for a reduced sentence if the Guidelines amendment has the effect of lowering his "applicable guideline range." *See* U.S.S.G. § 1B1.10(a)(2)(B); 18 U.S.C. § 3582(c)(2). "We have thoroughly discussed the meaning of the phrase 'applicable guideline range' and have expressly held that 'a defendant's guideline range is the range produced under the guidelines' sentencing table after a *correct* determination of the defendant's total offense

level and criminal history category but prior to any discretionary departures." *Garrett*, 758 F.3d at 753 (quoting *Pembrook*, 609 F.3d at 385).

The SMR took an altogether different approach. It calculated defendant's applicable Guideline range starting with the initial base offense level the district court adopted after applying the "*1:1 powder cocaine to crack cocaine ratio, which reduced the offense level to 26*." With the appropriate adjustments for leadership and acceptance of responsibility, the SMR assigned defendant a final base offense level of 25, and a Guidelines range of 84 to 105 months—just as the district court did when it sentenced him to 96 months' imprisonment. The SMR assumed, in other words, that Smith's "applicable guideline range" was the range the district court ultimately applied at sentencing—as opposed to the range that applied before any departures or variances. In apparent agreement with the SMR's reasoning, the district court followed its recommendation to modify Smith's sentence. This was error.

Defendant's applicable Guideline range is "the range that was applicable to him *under the Guidelines*; not the range, if any, upon which his sentence was ultimately based." *Garrett*, 758 F.3d at 753; *see also Pembrook*, 609 F.3d at 387. Even by November 2011, "the Guidelines commentary ha[d] been amended to clarify and affirm this point," *Garrett*, 758 F.3d at 753, specifying that the applicable Guideline range is the range "that corresponds to the offense level and criminal history category . . . which is determined before consideration of any departure . . . or any variance," U.S.S.G. § 1B1.10 cmt. 1(A). Here, that means Smith's "applicable guideline range" was the range that applied *before* the district court adopted the one-to-one ratio at sentencing, not after.

In an effort to evade § 1B1.10, Smith claims the district court's one-to-one ratio was neither a departure from, nor a variance to the Guidelines range. He argues the district court

"made an express [factual] finding" that he was "responsible for 994.238 grams of powder cocaine." Smith is incorrect.

The district court never made findings regarding the amount of powder cocaine defendant distributed as opposed to the amount of crack cocaine he distributed. The PSR assigned Smith responsibility for 174.439 grams of cocaine base and 819.799 grams of powder cocaine; thus, 994.238 grams represents the total amount of drugs Smith conspired to distribute. Further, the PSR detailed the instances in which defendant sold each substance. When the court asked whether he had any objections "only with regard to th[at] factual recitation," Smith replied he did not. Indeed, defendant conceded drug quantity and type by pleading guilty to conspiring to distribute cocaine and cocaine base, and admitting that he "distribut[ed] 50 grams or more of crack cocaine" at his plea hearing.[4] Had the district court found Smith responsible for powder cocaine exclusively, it would have been unnecessary for the court to explain that it "calculated the offense level based on a one-to-one powder to crack cocaine ratio,"—or resort to a one-to-one ratio in the first place.

Use of an alternative ratio to lessen the sentencing disparity between powder and crack cocaine is considered a variance to the Guidelines on policy grounds. *See Spears v. United States*, 555 U.S. 261, 263–66 (2009) (per curiam); *see also Garrett*, 758 F.3d at 753. Yet even if a one-to-one ratio "may in some way be considered a 'departure' . . . any departure would have no effect on [defendant's] 'applicable guideline range,' which is the range 'that applied before the sentencing court decided to depart or vary.'" *Garrett*, 758 F.3d at 753 (quoting *Pembrook*, 609 F.3d at 384–85). Departures and variances may be discretionary, but the "applicable

---

[4]Defendant also stipulated to distributing 174.439 grams of cocaine base and 819.799 grams of powder cocaine in his plea agreement. The court accepted his plea, however, without adopting the agreement in a written order.

guideline range" is not. *Id.* It "does not vary from one court to another," and "certainly cannot be changed by a policy *disagreement* with the Guidelines." *Id.* The government is therefore correct that Smith's "applicable guideline range" must be calculated without the one-to-one ratio.

Without the one-to-one ratio, defendant's cocaine and cocaine base quantities equate to 786.88 kilograms of marijuana, *see* U.S.S.G. § 2D1.1 cmt. (10)(B) & (D), corresponding to an initial base offense level of 30 in the 2011 Guidelines.[5] Offense level 30 is reduced to 29 after the leadership and acceptance of responsibility adjustments. A final base offense level of 29, combined with a criminal history category of IV, yields an applicable Guideline range of 121 to 151 months' imprisonment. *See* U.S.S.G. §§ 2D1.1(c) and 5A (sentencing table).

B.

The next step is comparing Smith's applicable Guideline range to the amended Guideline range—the range "that would have been applicable . . . if the amendment[] . . . had been in effect at the time the defendant was sentenced," leaving "all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1). For the probation officer, leaving "all other guideline application decisions unaffected" in this case meant reapplying the district court's one-to-one ratio to determine defendant's amended Guideline range: "*At the time of sentencing the Court used a 1:1 powder cocaine to crack cocaine ratio, which reduced the offense level to 26. At this time the offense level is reduced to 24.*" After a reduction to a final base offense level of 23 based on the appropriate adjustments, the officer concluded defendant's amended Guideline

---

[5]This calculation also eliminates the PSR's erroneous mixed-drug reduction. *See* n.2, *supra*. Although we ordinarily determine eligibility for modification by "substitut[ing] only" the retroactive amendment and "leav[ing] all other guideline application decisions unaffected," *see* U.S.S.G. § 1B1.10(b)(1), even if incorrectly made, *see Dillon v. United States*, 560 U.S. 817, 831 (2010), the mixed-drug reduction in the present case is not an "other guideline application decision[]" that the district court *actually made*. The court specifically rejected the PSR's calculation in favor of the one-to-one ratio. Thus, this is not the type of "mistake[] in [the defendant's] original sentence" we are prohibited from correcting under *Dillon*. *Id.*

range was 70 to 84 months' imprisonment, and recommended a reduced sentence of 80 months' imprisonment. This was incorrect.

As explained, a one-to-one ratio is a policy-based variance to the Guidelines, not a "guideline application decision[]" to be left unaffected under § 1B1.10(b)(1). "[T]he provisions of § 1B1.10 . . . require a resentencing court to apply the amended Guidelines range that would have been applicable to a defendant, *without* applying any departures [or variances] other than one . . . based on a defendant's substantial assistance." *United States v. Taylor*, 815 F.3d 248, 251 (6th Cir. 2016) (quoting *United States v. Steele*, 714 F.3d 751, 753 (2d Cir. 2013) (per curiam)). It is undisputed that the district court did not apply a one-to-one ratio to reflect Smith's substantial assistance to the government. Thus, Smith's amended Guideline range must be calculated without that variance.

Removing the variance returns the analysis to a marijuana equivalency calculation. After Amendment 782, the base offense level for 786.881 kilograms of marijuana is 28—again reduced to 27 after leadership and acceptance of responsibility adjustments. Offense level 27 and criminal history category IV results in an amended Guideline range of 100 to 125 months' imprisonment. *See* U.S.S.G. §§ 2D1.1(c) (eff. Nov. 1, 2014) and 5A (sentencing table) (eff. Nov. 1, 2014). An amended Guideline range of 100 to 125 months has the effect of lowering Smith's applicable Guideline range of 121 to 151 months. While this is not the end of the inquiry, it means that "[a] reduction in the defendant's term of imprisonment" is at least consistent with the Commission's "policy statement" in U.S.S.G. § 1B1.10(a)(2)(B).

## C.

However, the reduction is not consistent with the Commission's policy statement in § 1B1.10(b)(2). "Subsection 1B1.10(b)(2) of the Guidelines Manual imposes a hard limit on a

court's ability to reduce the sentence for a defendant who has been deemed eligible for a § 3582(c)(2) sentence reduction." *Jackson*, 751 F.3d at 711 (footnote omitted). "The subsection's title—'Limitation and Prohibition on Extent of Reduction'—reflects this." *Id.* Under § 1B1.10 (b)(2), "the court shall not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range," except in instances of substantial assistance to the government (which again does not apply). *See Taylor*, 815 F.3d at 251–52. "When Congress granted the district courts authority to reduce otherwise valid sentences pursuant to § 3582(c)(2), it explicitly restricted judicial discretion by incorporating the Commission's policy statements, which limit the extent of the reduction." *Washington*, 584 F.3d at 700. The Guidelines may be advisory, but § 1B1.10(b)(2)(A)'s restrictions are not. *Id.*; *see also Jackson*, 751 F.3d at 711.

Smith's amended Guideline range was 100 to 125 months' imprisonment. Thus, he was not eligible for a modification because his original 96-month sentence was already beneath the minimum term of that amended range. *Jackson*, 751 F.3d at 711. The SMR's recommendation to the contrary depended upon an incorrect calculation of defendant's applicable and amended Guideline ranges. In following that erroneous recommendation, and reducing defendant's sentence to 80 months' imprisonment, the district court exceeded its authority under § 1B1.10(b)(2) and § 3582(c)(2). *See id.* Because the district court was prohibited from reducing defendant's sentence to a term less than the minimum of the amended Guideline range, "and because the district court did just that," its decision must be vacated. *Id.* at 711–12.

## III.

For these reasons, we vacate the district court's modified sentence and remand with instructions to reinstate Smith's original sentence.